## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DISHAY D. ELZEY**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 15-2174**

**DARREL VANNOY, WARDEN**                        **SECTION: "I"(1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Dishay D. Elzey, is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. On March 7, 2013, he was convicted of manslaughter under Louisiana law.[1] On December 16, 2013, he was sentenced to a term of thirty years imprisonment.[2] On September 19, 2014, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on May 22, 2015.[4]

---

[1] State Rec., Vol. 3 of 5, trial transcript, p. 551; State Rec., Vol. 1 of 5, minute entry dated March 7, 2013; State Rec., Vol. 1 of 5, jury verdict form.

[2] State Rec., Vol. 3 of 5, sentencing transcript; State Rec., Vol. 1 of 5, minute entry dated December 16, 2013.

[3] State v. Elzey, No. 2014 KA 0452, 2014 WL 4657317 (La. App. 1st Cir. Sept. 19, 2014); State Rec., Vol. 5 of 5.

[4] State v. Elzey, No. 2014-KO-2103, 2015 WL 3369649 (La. May 22, 2015); State Rec., Vol. 5 of 5.

On June 13, 2015, petitioner filed the instant federal application seeking *habeas corpus* relief.[5]  The state concedes that the application is timely and that petitioner has exhausted his remedies in the state courts.[6]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or

---

[5] Rec. Doc. 4.
[6] Rec. Doc. 13, pp. 2-3.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no

clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said

that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten,

552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also

expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell,

535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court

precedent simply does not warrant *habeas* relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir.

2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

application of the law by a state court will nonetheless be affirmed if it is not simultaneously

unreasonable.").

     While the AEDPA standards of review are strict and narrow, they are purposely so.  As the

United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable.
>      If this standard is difficult to meet, that is because it was meant to be.  As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal
> court relitigation of claims already rejected in state proceedings.  It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's precedents.
> It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard
> against *extreme malfunctions* in the state criminal justice systems, *not a substitute*
> *for ordinary error correction through appeal.  As a condition for obtaining habeas*
> *corpus from a federal court, a state prisoner must show that the state court's ruling*
> *on the claim being presented in federal court was so lacking in justification that*
> *there was an error well understood and comprehended in existing law beyond any*
> *possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

4

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

> Late in the evening on December 31, 2010, St. Tammany Parish Sheriff's Office (STPSO) Deputy Shane Bennett was dispatched to Chahta Trailer Park in Mandeville.  Julie Martin, a resident of the trailer park, had initially called 911 to report a fight between her live-in boyfriend, Kevin "Pee Wee" Robertson (the victim), and her former boyfriend, defendant.  As he was en route to Martin's residence, Deputy Bennett received information that the incident had escalated from a fight to a stabbing.
>
> Upon arriving at the scene, Deputy Bennett observed defendant in the doorway of Martin's trailer.  He was holding a knife in one of his hands.  Deputy Bennett announced his presence and ordered defendant to drop the knife.  Defendant complied, dropping the knife on Martin's back porch, and Deputy Bennett subsequently secured him in handcuffs.
>
> As Deputy Bennett secured defendant, STPSO Deputies Matthew Bauer and Brandon Brenner arrived at the scene.  Deputy Bauer remained with defendant and secured the porch area while Deputies Bennett and Brenner entered the residence and attempted to render aid to Robertson, who was bleeding profusely.  Robertson later died at the hospital.  An autopsy revealed that Robertson had suffered four stab wounds, two of which were potentially lethal -- one that pierced one of his coronary arteries and his left ventricle and another that punctured the top portion of his left lung.[7]

---

[7] State v. Elzey, No. 2014 KA 0452, 2014 WL 4657317, at *1 (La. App. 1st Cir. Sept. 19, 2014); State Rec., Vol. 5 of 5.

**III.  Petitioner's Claim**

Petitioner argues that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> In his sole assignment of error, defendant argues that the evidence presented at his trial was insufficient to support his conviction of manslaughter.  Specifically, defendant alleges that the state failed to prove beyond a reasonable doubt that he did not act in self-defense when he stabbed the victim.
>
> A conviction based on insufficient evidence cannot stand as it violates due process.  See U.S. Const. amend. XIV; LSA-Const. art. I, § 2.  The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).  See also LSA-C.Cr.P. art. 821B; State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988).  The Jackson standard of review, incorporated in Article 821B, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.  When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence.  See State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
>
> While defendant was charged with second degree murder, he was found guilty of manslaughter, which is a proper responsive verdict for a charge of second degree murder.  LSA-C.Cr.P. art. 814A(3).  Louisiana Revised Statutes 14:31A(1) defines manslaughter, in pertinent part, as follows:
>
>> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]
>
> The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances that may reduce the grade of homicide.  State v. Maddox, 522 So.2d 579, 582 (La.App. 1 Cir. 1988).  Manslaughter requires the presence of specific intent to kill or inflict great bodily harm.  See State v. Hilburn, 512 So.2d 497, 504 (La.App. 1 Cir.), writ denied, 515 So.2d 444 (La. 1987).

6

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan, 94-2503 (La. 11/25/96), 684 So.2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La. 1982). Specific intent to kill can be implied by the use of a deadly weapon such as a knife or a gun. State v. Maten, 04-1718 (La.App. 1 Cir. 3/24/05), 899 So.2d 711, 716, writ denied, 05-1570 (La. 1/27/06), 922 So.2d 544.

When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Ducre, 596 So.2d 1372, 1382 (La.App. 1 Cir.), writ denied, 600 So.2d 637 (La. 1992). Thus, the issue in this case is whether a rational fact finder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant did not kill the victim in self-defense. Ducre, 596 So.2d at 1382–83.

Louisiana Revised Statutes 14:20 provides, in pertinent part:

A. A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

Louisiana Revised Statutes 14:21 provides:

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

Defendant argues in his brief that he stabbed Robertson in self-defense. Specifically, he maintains that he inflicted the stab wounds only after Robertson approached him as he sat in Martin's kitchen and began to punch and choke him.

At trial, the jury heard two explanations for how defendant came to stab Robertson on the night of the incident. Julie Martin testified on behalf of the State. According to Martin's testimony, defendant called her sometime during the day on December 31, 2010, to ask if he could come by her home to wash his clothes and bathe. Martin testified that she and defendant had been romantically involved in 2007 and 2008, but that from 2009 onward, she lived and was involved romantically with Robertson.

Martin, defendant, and several of Martin's family members congregated at Martin's home while defendant's clothes were being washed. Martin testified that

7

defendant drank several beers throughout this time.  Around 7:15 p.m., Robertson arrived home from his job at a nearby hospital.  Robertson went to bathe, and then he joined the others in Martin's kitchen, where defendant gave him a beer.

According to Martin, after they conversed civilly for awhile, Robertson and defendant began to argue about who loved and cared for Martin the most.  The argument apparently became heated, and everyone left Martin's home except for Martin and defendant.  Martin stated that she took defendant to her living room couch, where she told him to sleep off his intoxication before he left.  Martin said that sometime later, Robertson returned home and began to have a conversation with her while defendant was still on the couch.  According to Martin, defendant rose from the couch, yelling at Robertson and threatening him.  Defendant then threw a punch at Robertson, and the men began to fight.  During the fight, Martin called 911 and attempted to step between the men.  Martin testified that Robertson attempted to retreat from the altercation by removing himself to the bedroom.  On the way to the bedroom, however, Robertson realized that he had been stabbed, and he fell to the ground.  Martin maintained that defendant was the aggressor throughout the incident.

Defendant testified on his own behalf at trial.  In contrast to Martin's description of their relationship as being totally in the past, defendant testified that he and Martin habitually saw each other on the weekend.  He stated that it was actually Martin who invited him to come to her home, and that he did not ask to stop by to wash his clothes and bathe.  In describing the incident, defendant stated that Robertson simply walked up to him and started punching him in the face as he sat at Martin's kitchen table.  Defendant alleged that, from there, Robertson grabbed him by the neck and began to choke him.  Defendant testified that, in an attempt to save his life, he began to grab at whatever he could find on Martin's table.  When he found something, he began to hit Robertson with it.  Defendant said he saw Robertson fall to the ground, and he ran outside in an attempt to get away.  At that point, he heard Deputy Bennett tell him to drop the knife, and it was only at that point he realized he had grabbed a knife during the struggle.  Defendant stated that all of the injuries he suffered -- black eyes, a busted lip, and three missing teeth -- were all the result of Robertson's aggression.

The guilty verdict of manslaughter indicates that the jury accepted the testimony of Martin to the extent that such testimony established that defendant did not kill Robertson in self-defense.  See State v. Spears, 504 So.2d 974, 977-78 (La.App. 1 Cir.), writ denied, 507 So.2d 225 (La. 1987).  The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.  Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.  The trier of fact's determination of the weight to be given evidence is not subject to appellate review.  An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt.  State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932.  We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases.  See State v. Mitchell, 99-3342 (La.

10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985).

The jury may have determined the aggressor doctrine applied, since one version of the events indicates that defendant escalated the conflict by striking Robertson first and by arming himself with a knife. See State v. Loston, 03-0977 (La.App. 1 Cir. 2/23/04), 874 So.2d 197, 205, writ denied, 04-0792 (La. 9/24/04), 882 So.2d 1167. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984). The jurors clearly did not believe defendant's hypothesis of innocence that he acted purely in self-defense.

In finding the defendant guilty of manslaughter, it is clear the jury did not believe the defendant's testimony regarding self-defense, but found the mitigating circumstances of sudden passion and/or heat of blood. See Maddox, 522 So.2d at 582. The possibility of a compromise verdict notwithstanding, the guilty verdict of manslaughter suggests the jury concluded either that the confrontation was sufficient provocation to deprive an average person of his self-control and cool reflection, or that an average person's blood would not have cooled before defendant stabbed Robertson.

After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant did not kill Robertson in self-defense and, as such, was guilty of manslaughter. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 422 (per curiam).

This assignment of error is without merit.[8]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[9]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal

---

[8] Elzey, 2014 WL 4657317, at *1-5; State Rec., Vol. 5 of 5.

[9] State v. Elzey, No. 2014-KO-2103, 2015 WL 3369649 (La. May 22, 2015); State Rec., Vol. 5 of 5.

law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that he has made no such showing.

As correctly noted by the Louisiana First Circuit Court of Appeal, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).[10]

---

[10] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.   Foy v.

In the instant case, the defense did not dispute that petitioner stabbed the victim.  While the defense argued that the victim was the aggressor and that petitioner simply acted in self defense, Julie Martin testified otherwise.  Although petitioner contends that Martin's testimony was untrue, the jury obviously found her testimony credible.   Where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal *habeas* court generally will not grant relief.   See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under the doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

---

Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

## RECOMMENDATION

It is therefore **RECOMMENDED** that petitioner's federal *habeas corpus* application be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this twenty-eighth day of September, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.